UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BMO BANK N.A., a national banking        Case No. 1:25-cv-10146
association, as Administrative Agent,

                       Plaintiff,

   -against-

SAILORMEN, INC., a Florida Corporation,

                       Defendant.
--------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) APPOINTING RECEIVER OVER DEFENDANT AND ITS ASSETS; (II) ISSUING STAY; AND (III) GRANTING RELATED RELIEF**

                                                  Tracy L. Klestadt
                                                  John E. Jureller, Jr.
                                                  KLESTADT WINTERS JURELLER
                                                  SOUTHARD & STEVENS, LLP
                                                  200 West 41st Street, 17th Floor
                                                  New York, New York 10036
                                                  Tel: (212) 972-3000
                                                  Fax: (212) 972-2245
                                                  Email: tklestadt@klestadt.com
                                                                  jjureller@klestadt.com

                                                  Attorneys for Defendant
                                                  *Sailormen, Inc.*

                    ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

Preliminary Statement..................................................................................................................1

Arguments....................................................................................................................................4

    I.    Plaintiff has failed to meet requirements for drastic remedy of appointment of receiver..4

        A. The Court must look beyond the receiver provision in the Security Agreement….7

        B. No facts presented to establish that adequacy of security or current financial condition warrants appointment of receiver …………………………………….10

        C. No imminent danger that property will be lost or squandered ………………….10

        D. Alternative legal remedies avaiblable …………………………………………...11

        E. Probabilty of success on underlying claims does not warrant appointment of reciever under the facts and circumstances ……………………………………...12

    II.   Any Appointment of Receiver Should Limit the Receiver's Rights, Duties and Authority Solely as Necessary to Adequately Preserve Plaintiff's Collateral .............................12

Conclusion …………………………………………………………………………………. 15

# **TABLE OF AUTHORITIES**

*Cases:*

*Citibank, N.A. v. Nyland (CF8) Ltd.,*
839 F. 2d 93 (2d Cir. 1988) ................................................................................................................ 5

*D.B. Zwim Special Opportunities Fund, L.P. v. Tama Broad, Inc.*,
550 F. Supp. 481, 490-91 (S.D.N.Y. 2008)……………………………………………….5, 7

*Melnick v. Press,*
2007 U.S. Dist. LEXIS 70223 (E.D.N.Y. Sept. 21, 2007) ................................................................. 5

*Miss Jones LLC v. Stiles*,
2019 U.S. Dist. LEXIS 115477 *4  (S.D.N.Y. July 10, 2019) …………………………………5

*Rosen v. Siegel,*
106 F. 3d 28 (2d. Cir. 1997)................................................................................................................ 4

*United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC,*
866 F. Supp. 2d 247, 2012 U.S. Dist. LEXIS 74821 (S.D.N.Y. May 30, 2012) ...............4, 5, 9, 10

*Varsames v. Palazzolo,*
96 F. Supp. 2d 361 (S.D.N.Y. 2000) ..................................................................................................4

*Wells Fargo Bank N.A. v. 366 Realty LLC,*
2025 U.S. Dist. LEXIS 203466, *24  (E.D.N.Y. October 15, 2025)……………………...7

*Wilmington PT Corp. v. Tiwana*,
2020 U.S. Dist. LEXIS 52884 *5 (E.D.N.Y. March 25, 2020)............................................. 4, 5, 7

Defendant, Sailormen, Inc. ("Defendant"), by its counsel, hereby submits its opposition ("Opposition") to the expedited motion ("Motion") of Plaintiff BMO Bank N.A., in its capacity as administrative agent to the Lenders[1] under the Credit Agreement, seeking, on an expedited basis, the immediate appointment of its proposed receiver to assume control over Defendant's business and operations, a stay over all actions against the Defendant, and related relief. For the reasons more fully set forth herein, it is respectfully requested that the Motion be denied in all respect, or to the extent the Court is inclined to grant the "extraordinary remedy" of appointing a receiver over the property of the Debtors, that any such order limit the scope of the receiver's rights, duties and authority <u>solely</u> to the extent necessary to protect the Plaintiff's interests in the property, while maintaining the rights of the Defendant, its management, its Board of Directors, and its equity interest holders.

In support of the Opposition, Defendant submits the Declaration of Ralph N. Strayhorn, Defendant's Independent Director, dated January 7, 2026 ("Strayhorn Declaration") and the Declaration of Brett Bishov, Managing Partner of Capital Insight LLC, Defendant's financial advisor, dated January 7, 2026 ("Bishov Declaration").

***As a result of ongoing discussions between Plaintiff, Defendant (including its equity interest holders) and Franchisor, Defendant respectfully requests that any hearing on this Motion be scheduled, if necessary, upon completion of such discussions. To the extent no resolution is achieved, Defendant requests oral argument on the Motion.***

## PRELIMINARY STATEMENT

Plaintiff and Defendant have been in steady negotiations regarding the outstanding obligations under the Credit Agreement for a significant period of time, resulting in a series of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

amendments to the Obligations under the Loan Documents.  While the parties are still negotiating possible terms to restructure the Obligations, Defendant continues to operate its significant business enterprise –136 Popeyes Louisiana Kitchen ("Popeyes") franchise restaurants throughout Florida and Georgia, actively employing more than 2900 employees in these two states.

Despite these ongoing good faith negotiations, the Lenders submit this motion for appointment of a receiver, referencing a provision under Section 11 of the Security Agreement which provides for Plaintiff's right to the appointment of a receiver of the "properties and assets of" Defendant upon the occurrence of an Event of Default.  Notwithstanding, it is submitted that, upon review of the factors considered by the Court in granting such drastic relief, the appointment of a receiver is not warranted in this matter, at this time.  An analysis of the facts and circumstances make clear that Plaintiff has failed to make the requisite showing to meet its burden of establishing that such a drastic remedy - i.e. one that unilaterally strips Defendant, its management, its Board of Directors, and its stakeholders of all control and decision making for their enterprise - is necessary to protect its collateral.   Plaintiff has failed to meet the high bar of establishing "the near certainty of inexorable and substantial diminution of value of" its collateral to warrant the Court's exercise of its discretion to grant such extraordinary relief.

The Motion outlines certain Events of Default under the Loan Documents, which have been ongoing and the subject to continued discussions and negotiations between the parties. However, the Court's analysis for the appointment of a receiver looks further, and in doing it is clear that the Motion fails to meet the heavy burden put in place by the Court under these circumstances.  There is no dispute that Defendant's significant business enterprise remains operational.  There is no allegation or claim that any of Defendant's 136 franchise restaurants are

closed, or that such a closing is imminent. There is no allegation or claim that the Franchisor – Popeyes' Louisiana Kitchen, Inc. - has taken or presently intends to take any action against Defendant under the Franchise Agreements. The Motion acknowledges that Defendant has been able to meet its payroll obligations to date for its 2900 employees. The allegation that Defendant is in immediate danger of running out of money is speculative, at best. The Motion fails to provide the Court with any financial statements or data necessary for it to properly consider Defendant's financial condition *despite* the Lenders being recipients of bi-weekly financial statements and detailed periodic financial reporting from Defendant at all relevant times.

Further, the Motion completely ignores the fact that the appointment of a receiver is an express event of default under the Franchise Agreements, which, under the terms thereof, automatically triggers the termination of the Franchise Agreements and all rights thereunder, including the right to operate the franchise restaurants. The end-result will not be the protection of Defendant's assets and Plaintiff's collateral or the preservation of value, but instead the closure of the 136 franchise restaurants and the termination of the 2900 employees.

To the extent the Court finds that the grant of the drastic remedy of appointing a receiver is appropriate and vitally necessary, Defendant respectfully requests that the Court limit the scope of any court-appointed receiver's rights, duties and authority as may be solely necessary to adequately preserve Plaintiff's collateral under the Loan Agreements. Plaintiff does not establish the need for such unfettered control by a receiver. All actions likely to be taken by a receiver are already in the works by Defendant, including retention of CI as financial advisor, appointment of an independent director to Defendant's three (3) person Board of Directors, robust marketing efforts for the sale of certain restaurant locations, and ongoing negotiations to restructure of the debt or sale of the notes in satisfaction thereof.

To the extent a receiver is appointed, it is requested that any order permit Defendant, its Board of Directors, and its equity interests holders to preserve and maintain all existing rights under the company's By-Laws, including to seek other actions or remedies that it determines are in the best interest of Defendant, its employees, and its stakeholders, which may include (i) making a determination to seek bankruptcy protection, (ii) providing for a proposed restructuring of the business operations, (iii) restructuring or sale of the notes in satisfaction of the outstanding obligations to the Lenders, or (iv) marketing and effectuating a sale of all or a part of the business, all in line with any obligations under the Credit Agreement and the terms of the Franchise Agreements.

## ARGUMENTS

### I. Plaintiff has failed to meet requirements for drastic remedy of appointment of receiver.

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 2012 U.S. Dist. LEXIS 74821, **4 (S.D.N.Y. May 30, 2012)(citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)). "The appointment of a receiver is considered to be an extraordinary remedy." *Id.* (citing *Rosen v. Siegel*, 106 F. 3d 28, 34 (2d. Cir. 1997)). "The Second Circuit has described 'the appointment of a receiver [as] an extraordinary remedy,'' entrusted to the discretion of the district court, and has cautioned that such a 'remedy should be employed cautiously and granted only when clearly necessary to protect plaintiff's interest in the property.'" *Wilmington PT Corp. v. Tiwana*, 2020 U.S. Dist. LEXIS 52884 *5 (E.D.N.Y. March 25, 2020) (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F. 2d 93, 97 (2d Cir. 1988)).

In considering an application for appointment of a receiver, the Courts have held that "the following factors are relevant to establishing the need for a receivership: (i) fraudulent conduct

on the part of defendant; (ii) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (iii) the inadequacy of the available legal remedies; (iv) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing the appointment; and (v) in more general terms, plaintiff's probability of success in the action and the possibility of irreparable injury to his interests in the property." *Id.* (citing *Varsames*, 96 F. Supp. 2d at 365).[2]

These factors are considered even if there is a contract provision consenting to such relief upon the occurrence of an event of default under the relevant agreement. *See, e.g., Wilmington PT Corp. v. Tiwana*, 2020 U.S. Dist. LEXIS 52884 at *10-11 ("the court does not view the contractual language in the parties' Mortgage to be dispositive of plaintiff's motion; instead, the court must determine whether there are any additional factors present in the instant case that counsel in favor of granting plaintiff's request for a receivership"); *D.B. Zwim Special Opportunities Fund, L.P. v. Tama Broad, Inc.*, 550 F. Supp. 481, 490-91 (S.D.N.Y. 2008) (the existence of a contractual provision "is a factor that the court considers but does not dispose of the court's inquiry in plaintiff's favor.").

As was the case in *Nesbitt Bellevue Prop.*, there are <u>no</u> allegations of fraud and <u>no</u> dispute that there were certain occurrences of default under the Credit Agreement; instead, the parties herein dispute the existence of any imminent danger of the diminution of value of the property of Defendant. The showing of imminent danger "is a critical factor in the analysis of whether to appoint a receiver." *Id.* (citations omitted). "Plaintiffs are required to make a clear showing that

---

[2] The final two factors, the inadequacy of property to secure the debt and the financial status of the debtor, along are insufficient [to] show that appointment of a receiver is appropriate. *Miss Jones LLC v. Stiles*, 2019 U.S. Dist. LEXIS 115477 *4 (S.D.N.Y. July 10, 2019)

the appointment is necessary to prevent irreparable injury." *Melnick v. Press*, No. 06 CV 6686, 2007 U.S. Dist. LEXIS 70223 (E.D.N.Y. Sept. 21, 2007).

The parties further dispute the balancing of the harms between the risk of such a diminution in value if a receiver is not appointed and the injury that Defendant would suffer if one is appointed. In order to hear and decide these disputes, the Court in *Nesbitt Bellevue Prop.*, held that an evidentiary hearing was required to address these disputed issues. A similar result is necessary in the instant matter, and a hearing is requested by Defendant herein.

Courts have held that the dispositive issue is whether the appointment of a receiver is "clearly necessary to protect plaintiff's interest in property." *Id.* at 254 (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F. 2d at 97). An analysis of the facts and circumstances in this matter shows that Plaintiff fails to meet the "clearly necessary" requirement for such extraordinary relief.

In support of the relief sought in the Motion, Plaintiff relies upon unproven assumptions, unsubstantiated allegations, random verbal statements and emails, and potential prospective actions in its effort to meet its burden of establishing imminent danger to its collateral. None of the allegations meet the high bar required to establish any of the factors considered by the Court in appointing a receiver. The Motion's reliance almost entirely on speculation, without more, is insufficient for granting the drastic relief requested. While there is no dispute that certain Events of Default have occurred and are continuing under the terms of the Loan Documents, all of which (as Plaintiff acknowledges) have been the subject of continued and ongoing good faith discussions with Defendant for an extended period of time, an analysis of the remaining arguments clearly shows that they fall short of proving that the business and thus the collateral is in immediate peril.

**A. The Court Must Look Beyond the Receiver Provision in the Security Agreement.**

Plaintiff argues that the provision in Section 11 of the Security Agreement, which provides for the appointment of a receiver for the "properties and assets of" Defendant weighs heavily in favor of granting the Motion. *See* Motion, p.13. While a contract provision consenting to appointment of a receiver upon a default may be strongly considered, "the existence of such a contract provision, however, is not dispositive, and the appointment of the receiver is within a court's discretion." *Wells Fargo Bank N.A. v. 366 Realty LLC,* 2025 U.S. Dist. LEXIS 203466, *24 (E.D.N.Y. October 15, 2025) (citing *Fed. Nat'l Mortg. Ass'n v. 1488 Bushwick, LLC,* U.S. Dist. LEXIS 204211, *3 (E.D.N.Y. Nov. 8, 2024)); *see, also Wilmington PT Corp. v. Tiwana*, 2020 U.S. Dist. LEXIS 52884 at *10-11; *D.B. Zwim Special Opportunities Fund, L.P. v. Tama Broad, Inc.*, 550 F. Supp. at 490-91.[3] An analysis of the facts and circumstances make clear that Plaintiff has failed to make the requisite showing to meet its burden of establishing that such a drastic remedy, i.e. one that strips Defendant, its management, its Board of Directors, and its stakeholders of all control and decision making for their enterprise, is necessary to protect its collateral. It is submitted that the facts warrant the denial of any such relief, notwithstanding the pro forma consent language in Security Agreement.

First, Plaintiff and Defendant have been in steady negotiations regarding the outstanding obligations under the Credit Agreement for a significant period of time. The parties held serious negotiations for the restructure of the debt obligations from January 2025 through June 2025, providing at least six formal restructuring proposals. *See* Bishov Declaration, ¶8. After determining that the restructuring proposals could not satisfy the requirements of the Franchisor under the Franchise Agreements, the parties pivoted, collaboratively, to a new plan for the

---

[3] To the extent the Court determines that the burden shifts to Defendant to establish why a receiver should not be appointed, it is submitted that Defendant makes such a determination in this Opposition and meets any such burden.

7

marketing and sale of 32 franchise restaurants in Jacksonville Florida DMA which would provide capital for a revised restructuring proposal that would meet the requirements of the Franchisor under the Franchise Agreement. *Id.,* ¶11. This alternate plan was taken in coordination with the Lenders, and the Lenders remained intimately involved in this entire process. *See* Bishov Declaration, ¶12.

Second, there are no facts presented in the Motion to provide evidence of any substantial diminution of value of Plaintiff's collateral. To the contrary, the following facts are instructive for the Court:

- Defendant's significant business enterprise remains operational.
- All of Defendant's restaurants remain open and operating.
- Defendant has been able to meet, and will continue to meet, its payroll obligations to date for its 2900 employees.
- The Franchisor has not taken any action against Defendant under the Franchise Agreements which would operate to terminate them. Defendant's restaurants remain in good standing under the Franchise Agreements.

*See* Strayhorn Declaration, ¶27.

While Plaintiff has baldly alleged that "Defendant is in immediate danger of running out of money" (*see* Motion, p. 2), the Motion provides no support for this statement and it remains speculative at best. *See* Strayhorn Declaration, ¶28. In fact, the Motion fails to provide the Court with any financial statements or information necessary for it to adequately consider Plaintiff's arguments as to Defendant's financial condition; instead relying upon certain informal and random verbal statements and emails (which are disputed) to evidence Defendant's purported insolvency. *See* Motion, p. 15-16; *see also,* Bishov Declaration, ¶15. The failure to provide any financial information or data is telling, especially since the Lenders received bi-weekly cash flow statements from Defendant and periodic financial reporting including store

level and corporate profit and loss statements, cash flow, balance sheets, liquidity compliance and EBITDA compliance. *See* Strayhorn Declaration, ¶28.

The Motion also relies upon certain agreements to defer rent payments with Defendant's landlords to show that the collateral is in peril, arguing that an eviction would result in the termination of the Franchise Agreements. *See* Motion, p.16.  However, the Motion does not allege that any facts related to such deferrals, and in fact acknowledges that Defendant has made catch-up payments with respect to such deferred rent payments. *Id.*; *see also* Strayhorn Declaration, ¶29.  Importantly, as set forth below, Plaintiff's own actions of seeking a receiver put the rights under the Franchise Agreements at much greater risk.

Notwithstanding the foregoing, Defendant has affirmatively taken significant steps in its effort to restructure the business and preserve value for the stakeholders including the Lenders. These affirmative actions by Defendant include retaining CI as financial advisor to assist with, *inter alia*, the restructuring of the debt obligations and marketing and sale of certain assets; retaining Ralph Strayhorn, a person with extensive experience, as the Independent Director to their three (3) person Board of Directors; marketing the sale of assets to provide capital to the business and in furtherance of a restructuring of the debt that can meet the requirements under the Franchise Agreement.  *See* Strayhorn Declaration, ¶30.

What is completely ignored in the Motion is that the appointment of a receiver will not preserve or create any value, but in fact would destroy value.  The appointment of a receiver is a default under the Franchise Agreement, which, pursuant to its terms, causes an automatic termination of the Franchise Agreements and all rights thereunder, including the right to continued operation of Defendant's franchise restaurants.  *Id.,* ¶¶15-16, 31.  Defendant is not aware of any agreement between the Lenders and the Franchisor under which the Franchisor

agrees to waive this default and termination. *Id.,* ¶31. The result will be, without any other interceding actions, catastrophic, and if so terminated would result in the closure of all 136 franchise restaurants, and the termination of 2900 employees, with possible immediate effect. *Id.* The balancing of the harms factor greatly weigh in Defendant's favor as the result would be devastating to Defendant's business and operations.

Considering the entirety of the facts and circumstances, it is submitted that the factors weigh in favor of Defendant and the denial of the Motion, despite the unilateral pro forma receiver provision in the Security Agreement.

**B.  No facts presented to establish that adequacy of security or current financial condition warrants appointment of receiver.**

Plaintiff argues that the adequacy of the security and the current financial condition of the Defendant warrants the appointment of a receiver.  However, the Motion presents no facts to support this argument.  As set forth above, Plaintiff does not provide any financial statements or information in the Motion to support these arguments.  Thbis is telling in that Defendant provides Plaintiff and the Lenders with detailed financial reporting from Defendant on a weekly and periodic basis. *See* Strayhorn Declaration, ¶28.  Notwithstanding, the Motion does not provide any analysis of the financial condition, expert or otherwise, which permits this Court to consider this argument.  Other than the obligations under the Loan Documents, for which discussions remain ongoing, the Motion does not allege that Defendant has defaulted on any other payment obligations.

**C.  No imminent danger that property will be lost or squandered.**

Plaintiff argues that there is an imminent danger that property will be lost or squandered. *See* Motion, p. 17.  Yet, unlike the facts in the case of *Nesbitt Bellevue Prop.,* Plaintiff cannot establish this factor with any sufficient certainty.   In *Nesbitt Bellevue Prop.,* the court found that

the evidence established that the defendants had numerous defaults under their hotel license agreement, and "if the hotels were to lose their licenses to operate under the Embassy Suites brand, that would substantially diminish their value." *Id.* at 251-252.  In the case at bar, Plaintiff has not made any such showing.  The Motion does not dispute that Defendant's business remains operational.  The Motion does not allege or provide any evidence that Defendant is in default under the Franchise Agreements, or that the Franchisor is contemplating terminating any Franchise Agreements.   The Motion does not allege or provide any evidence that payroll has not been paid timely.   The Motion does not allege or provide any evidence that Defendant is in the process of being evicted under any of the leases, and the Motion acknowledges that Defendant has made "catch up" payments to the lessors for agreed upon deferrals of rent payments.  *See* Motion, pp. 10-11.

To the contrary, as described above, the appointment of a receiver would be a default under the Franchise Agreement, resulting, pursuant to the terms, in the automatic termination of the Franchise Agreement and the rights thereunder.   This is completely the opposite of the court's reasoning for appointing the receiver in *Nesbitt Bellevue Prop.*  Unlike preserving the rights under hotel license agreements with Embassy Suites, the appointment of the receiver for Defendant would, pursuant to the terms thereof, result in the termination of rights under the Franchise Agreements.  The operations of Defendant's 136 franchise restaurants and the employment of more than 2900 employees would be at risk.  Instead of preserving value, the value could be wiped out.

### D. Alternate legal remedies are available.

Plaintiff argues that alternative legal remedies are not adequate.   While Plaintiff has asserted the occurrence of certain Events of Default under the Loan Documents, the Motion fails

11

to establish that the appointment of a receiver is the sole legal remedy available. In fact, Plaintiff has asserted certain causes of action for breach of contract, which, if proven, will provide for certain rights and remedies, both under the law and the Loan Documents. As such, the Motion's allegations suffer from the same deficiencies set forth above, namely the failure to provide any sufficient facts to support the claim.

      **E. Probability of success on underlying claims does not warrant appointment of receiver under the facts and circumstances.**

Lastly, while a question remains as to whether Plaintiff will succeed on its breach of contract claims as asserted in the Complaint, it is submitted that the analysis of the facts and circumstances warrants maintaining the *status quo* pending any decision on such claims if so proven at trial. While Plaintiff seeks the receivership "to assume control over" Defendant and its properties and assets, the allegations in the Motion do not establish "the near certainty of inexorable and substantial diminution of value of" its collateral to warrant the Court's exercise of its discretion to grant such extraordinary relief.

      **II.  Any Appointment of Receiver Should Limit the Receiver's Rights, Duties and Authority Solely as Necessary to Adequately Preserve Plaintiff's Collateral.**

To the extent the Court finds that the drastic remedy of appointing a receiver is appropriate and vitally necessary, Defendant respectfully requests that the Court limit the scope of any court-appointed receiver's rights, duties and authority as may be <u>solely</u> necessary to adequately preserve Plaintiff's collateral under the Loan Agreements.

In appointing a receiver, it is requested that any order permit Defendant, its Board of Directors, and its equity interests holders to preserve and maintain all existing rights under the By-Laws, including to seek other actions or remedies in the best interest of the company, its employees and stakeholders, which may include (i) making a determination to seek bankruptcy

12

protection, (ii) providing for a proposed restructuring of the business operations, (iii) restructuring or sale of the notes in satisfaction of the outstanding obligations to the Lenders, or (iv) marketing and effectuating a sale of all or a part of the business, all in line with any obligations under the Credit Agreement and the terms of the Franchise Agreements.

The Motion seeks an order from this Court whereby Defendant would relinquish full control over Defendant's business operations, and effectively all decisions regarding this significant enterprise, to a receiver hand-picked by Plaintiff.  Yet, the applicable provision of the Security Agreement relied upon in the Motion for providing for the appointment of a receiver does not provide for, nor are there any facts to establish that Defendant consent to, an appointment which would provide unfettered control to a proposed receiver, obviate the rights of Defendant's Board of Directors, shareholders or management, or modify the provisions of Defendant's organizational and operating agreements.

Section 11 of the Security Agreement generally provides for the appointment of a receiver over the "properties and assets of" Defendant.  However, there are no facts shown to establish that this provision was intended to cede all control over the enterprise, or the significant decisions that the company may consider, to the receiver.  These powers are expressly provided to Defendant's Board of Directors under the By Laws.  The provision does not provide for the modification of the corporate organizational documents.  Further, the plain language shows that any consent to an appointment of a receiver under the Security Agreement is limited in time, namely "upon the occurrence and during the continuation of an Event of Default."  To the extent the Event of Default is cured, the receivership is intended to terminate.

Tellingly, Plaintiff does not even try to establish the need for such unfettered control by a receiver.  All actions to be taken by a receiver are already in the works by Defendant, including

13

retention of CI as financial advisor, appointment of an independent director, marketing efforts for sale of certain restaurant locations, and negotiations for restructuring of the debt or sale of the notes in satisfaction thereof.

Plaintiff asserts that "[a]ppointing a receiver to assume complete control of Defendant and all of its restaurant operations *would largely ameliorate these problems*." *See* Motion, p. 3 (emphasis added). Yet, the Motion fails to address how the receiver proposes to do anything different than the steps that current management has already implemented. In fact, the Motion states that the proposed receiver would "utilize key members of Defendant's existing management and operational teams" to "evaluate and implement an appropriate strategy to maximize value." *Id.* Further, the Motion asserts that the goal of the receiver is to maintain the business as a going concern and sell the assets for the benefit of the lenders. *Id.* But, as set forth above herein, Defendant has already affirmatively taken these steps, many in coordination with and agreement of the Lenders.

As such, notwithstanding any determination for the appointment of a receiver, it is submitted any order of the Court appointing a receiver should specify that Defendant's Board of Directors and equity interest holders retain all right sunder the By Laws, including without limitation, making a determination to seek bankruptcy protection, providing for a proposed restructuring of the business operations, and/or marketing and effectuating a sale of all or a part of the business, in line with any obligations under the Loan Documents and the terms of the respective franchise agreements with Franchisor.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the Motion be denied in all respects. To the extent the Court finds that the drastic remedy of appointing a receiver is appropriate and vitally necessary, Defendant respectfully requests that the Court limit the scope of any court-appointed receiver's rights, duties and authority as may be <u>solely</u> necessary to adequately preserve Plaintiff's collateral under the Loan Documents.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1 of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York, the undersigned counsel hereby certifies that as measured by the word-processing system used to prepare this brief, there are 4,424 words in this brief.

*/s/ John E. Jureller, Jr.*
John E. Jureller, Jr.