**BOARD ADVISORY SERVICES AGREEMENT**

**THIS BOARD ADVISORY SERVICES AGREEMENT** ("Agreement") is made and entered into as of June 4, 2025, between Cape Point Advisory Partners, LLC ("Cape"), and Sailormen, Inc. ("Client"), together, referred to as the ("Parties").

**RECITALS:**

**WHEREAS** Client wishes to engage Cape to provide board and other advisory services pursuant to the terms of this Agreement.

**NOW, THEREFORE,** for and in consideration of the premises and the mutual promises made herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Cape and Client hereby agree as follows:

1. **Engagement of Cape; Services.** Client hereby engages Cape to provide Client with advisory services identified in the Services Exhibit attached hereto as **Exhibit A** (the "Services Exhibit"), subject to the terms and conditions of this Agreement. The Services Exhibit shall be deemed part of this Agreement. The Client further acknowledges that, subject to agreement between Client and Cape, Cape is free to perform the designated services within such hours and at such locations Cape deems appropriate and necessary.

2. **Term and Termination of Agreement.** The term of Cape's engagement shall commence on the date of this Agreement unless otherwise specified in the Services Exhibit. Client may terminate Cape at any time. In the event of termination, Client agrees to promptly pay Cape for all services rendered and all reimbursable expenses incurred through the date of termination. Cape reserves the right to withdraw with Client's consent or for good cause, which includes breach of this Agreement by reason of failure to pay for services as provided herein. Upon the effective termination of this Agreement by either Party, the Client's right to utilize the services of Cape shall immediately cease, and the Cape shall immediately cease providing services to Client.

3. **Services Fees.** In consideration of the provision of advisory services by Cape to Client, Client shall pay Cape's Services Fees according to the terms set forth in the Services Exhibit. Unless otherwise stated in the Services Exhibit, payment is due upon receipt of the invoice by Client. If Client exercises its right to terminate Cape under paragraph 2, any retainer paid to Cape shall be deemed earned on termination in the event termination occurs within thirty (30) days of execution of this Agreement.

4. **Confidential Information.** Cape acknowledges and agrees that all information concerning Client's business which, at the time of disclosure, is not generally known by the public is confidential and proprietary. Cape hereby agrees that it will not duplicate, use or disclose any such information, unless such duplication, use or disclosure is specifically authorized by Client, contemplated by this Agreement or Agreements with Cape's affiliates or required by a court of competent jurisdiction. Confidential and proprietary information is defined to include, but is not limited to, customer

requirements, trade secrets, business procedures, price lists, financial data, customer lists and prospective customer lists. Client further recognizes that all communications between the Parties, whether written, oral or electronic are privileged communications between the Parties which may only be released to 3rd parties only upon the mutual written consent of both Parties, which will not be withheld by Cape. Cape agrees to protect Client's confidential and proprietary information to the same extent it protects its own confidential and proprietary information. In the event of a confirmed or suspected breach of this Agreement, in addition to any other rights and remedies available to it at law or equity, Client shall be entitled to notification detailing the breach or suspected breach within 24 hours of the discovery of said breach or suspected breach.

5. **Warranty Disclaimer.** The services provided pursuant to this Agreement are provided without any express or implied warranties of any kind. By signing this Agreement, Client acknowledges that Cape is an Independent Contractor, acting in the role of an Advisor to Client. The Client is solely responsible for decisions made, actions taken and resolutions implemented.

6. **Liability.** With regard to the services to be performed by Cape pursuant to the terms of this Agreement as outlined in Exhibit A, Cape shall not be liable to the Client, any successor in interest to Client or to anyone who may claim any right due to any relationship with the Client, for any acts or omissions in the performance of the services outlined in Exhibit A on the part of Cape, except when said acts or omissions of Cape are due to willful misconduct or gross negligence of Cape. The Client shall defend, indemnify and hold Cape harmless from any liabilities, losses, damages, expenses obligations, costs, claims, judgments, attorneys' fees and attachments arising from or growing out of the services rendered to the Client pursuant to the terms of this Agreement, or in any way connected with the rendering of services, except when the same shall be due to the willful misconduct or gross negligence of Cape, and Cape is adjudged to be guilty of willful misconduct or gross negligence by a court of competent jurisdiction. Client or its affiliates shall provide Directors' & Officers' Liability Insurance coverage acceptable to Cape.

7. **Damage Disclaimer.** To the extent permitted by applicable law, the liability of Cape, its agents, employees and other personnel, officers, directors, members, successors or assigns for damages, whether for breach of this Agreement, breach of warranty or otherwise shall be limited to an amount equal to the fees paid to Cape by Client, minus all reimbursement of business expenses, whether the liability arises from contract, tort or other claims. Cape shall not be liable for any incidental, consequential or special damages which may arise from this Agreement, including without limitation costs or procurement of substitute services nor for any lost profits, lost business, loss of use of data or interruption of business arising out of any breach of this Agreement or any services performed by Cape.

8. **General.** The signatory for Client warrants that such person has the authority to execute this Agreement for Client as its binding agent and that this Agreement does not violate any law, agreement, bylaw or understanding by which Client is bound. This

Agreement is governed by North Carolina law, and when executed by both parties, constitutes the entire agreement of the parties with respect to its subject matter and supersedes all previous agreements, quotations or negotiations between the parties, whether oral or written. This Agreement may only be amended in writing (including acknowledged e-mail correspondence) signed by Cape and Client. Client acknowledges that the authorized representative of the Client has read this Agreement and agrees to and understands all its terms and conditions.

9. **Arbitration and Waiver of Rights.** Any dispute or controversy arising out of, in connection with, or relating to this Agreement or its termination must be settled exclusively by arbitration in Charlotte, North Carolina by one arbitrator in accordance with the arbitration rules of the American Arbitration Association then in effect; provided, however, that this arbitration agreement does not preclude the parties from seeking to enforce the covenants in Section 4 of this Agreement in any court of competent jurisdiction without resort to arbitration. The arbitrator's award may include the manner in which fees of counsel and other expenses in connection with the dispute or controversy are to be borne by the parties. The arbitrator's authority and jurisdiction is limited to interpreting and applying the express provisions of the Agreement and the arbitrator has no authority to alter or add to the provisions of the Agreement. Judgment may be entered upon the arbitrator's award in any court of competent jurisdiction. THE PARTIES UNDERSTAND THAT BY AGREEING TO ARBITRATE IN THIS MANNER, THEY ARE WAIVING THEIR RIGHTS TO HAVE ANY DISPUTE ARISING OUT OF THE AGREEMENT TRIED BEFORE AND ADJUDICATED BY A JURY.

10. **Engagement of Cape Affiliate.** From time to time, Cape may recommend and introduce Client to other service providers and investors in which Cape retains a business or financial interest. In the event that Client, upon disclosure in writing by Cape and its related entities of Cape's business or financial interests in these affiliates or entities, determines that it is in Client's best interest to enter into a contractual or business relationship with one or more of these affiliates or entities, Client hereby acknowledges Cape's disclosure of these relationships. The written agreement(s) between the Client and these affiliates or entities shall be the sole, controlling document(s) which governs Client's business and contractual relationship with these affiliates or entities.

11. **Conflicts.** The Client acknowledges that with respect to information that Cape acquires during the representation of other clients, neither the Client nor any other person or entity will have any right or expectation of access to, or use of, such information.

12. **Notices.** All notices pursuant to this Agreement shall be in writing and sent certified mail, return receipt requested as follows:

**Client: Sailormen, Inc.**

9500 S. Dadeland Blvd. #800
Miami, FL 33156

Attn: Kara Nordstrom

**Cape Point Advisory Partners, LLC**

2201 Rhododendron Ct.
Charlotte, NC 28205

Attn: Ralph N. Strayhorn

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

**Sailormen, Inc.**

By: Kara Nordstrom
Title: Chair

**Cape Point Advisory Partners, LLC**

By: Ralph N. Strayhorn
Title: Managing Member

**EXHIBIT A**

**SERVICES EXHIBIT**

This Services Exhibit is dated June 4, 2025 and is a part of the Advisory Services Agreement (the "Agreement") between Cape and Client, dated June 4, 2025. Capitalized terms used in this Exhibit shall have the meanings set forth in the Agreement.

**Advisor:** **Cape Point Advisory Partners, LLC**

**Client:** **Sailormen, Inc.**

**Description of Services:**

On the terms and subject to the conditions of this Agreement, the Special Advisor agrees to act as a member of the Board of the Client, and to perform such other professional services as may be requested by the Client and hereafter agreed to by the Special Advisor in writing. Services include, but not limited to, loan workout/restructure with the Client's lenders, creditors, and franchisor and possible Chapter 11 bankruptcy filing. The services and compensation arrangements set forth herein do not encompass other services not set forth in this paragraph. If the Client and the Special Advisor later determine to expand the scope of services to include other services not otherwise set forth herein, such future agreement will be the subject of a further and separate written agreement of the Parties. Notwithstanding anything to the contrary in this Agreement, the Parties agree that:

(a) The Special Advisor shall perform such duties as shall be usual and customary for directors or managers of corporations under the applicable law of the state of Florida and as may be described in the Organizational Documents.

(b) The Special Advisor agrees to use his best efforts to attend all meetings (either in person or telephonically) of the Board.

(c) The Special Advisor represents that he will have sufficient time to perform his duties and responsibilities as the member of the Board.

(d) The Special Advisor represents that he has had no prior connection with the Client or any of its members, managers or officers, and that he has not represented the Client or, to the best of his knowledge, information and belief, any person or entity that has a substantial adverse interest to the Client.

**Fees and Terms:** The board service fees for Cape's services under this Services Agreement commence June 9, 2025 and conclude March 31, 2026, unless mutually extended. A retainer of $40,000 shall be paid upon execution of this Agreement, which

represent payment for the first two months. Fees for the third and following months shall reduce to $10,000/month, unless there is a bankruptcy filing. Upon a bankruptcy filing, fees shall increase again to $20,000/month until there is resolution/restructure with the creditors and franchisor or this Agssssreement is terminated. Fees are payable monthly in advance. All fees and expenses incurred shall be payable by ACH transfer or check, at Cape's election. Cape will submit expenses for reimbursement by e-mail each week and payment is immediately due as outlined above. Agreement extensions may be memorialized in writing. E-mail correspondence acknowledged by the Parties may serve as a valid and enforceable addendum to this Agreement.

**Expenses:** Client agrees to reimburse Cape for all reasonable out-of-pocket expenses, to include travel, reasonable accommodation, and meals while on site, travel on Client's behalf and document prep services in connection with the performance of the agreed-upon services.

**EXHIBIT A**

**SERVICES EXHIBIT**

This Amended Services Exhibit is dated August 30, 2025 and is a part of the Board Advisory Services Agreement (the "Agreement") between Cape and Client, dated June 4, 2025. This document supersedes and replaces "EXHIBIT A, SERVICES EXHIBIT, dated June 4, 2025. Capitalized terms used in this Exhibit shall have the meanings set forth in the Agreement.

**Advisor: Cape Point Advisory Partners, LLC**

**Client: Sailormen, Inc.**

**Description of Services:**

Based on the terms and subject to the terms of this Agreement, the Advisor agrees to serve as an independent member of the Board of Directors of the Client ("director"), and to perform such other professional services as may be requested by the Client and hereinafter agreed to by the director in writing.

(a) The director shall perform such duties as shall be usual and customary for directors or managers of corporations under the applicable laws of the state of Florida and as may be described in the Organizational Documents.

(b) The director agrees to use his best efforts to attend all meetings (either in person or telephonically) of the Board.

(c) The director states that he will have sufficient time to perform his duties and responsibilities as a member of the Board.

(d) The director represents that he has had no prior connection with the Client or any of its members, managers or officers, and that he has not represented the Client or, to the best of his knowledge, information and belief, any person or entity that has a substantial adverse interest to the Client.

The Client shall ensure that the director is appropriately covered under the Directors' & Officers' Liability Policies issued on behalf of the directors and officers of Sailormen, Inc., and shall cause evidence of such insurance to be forwarded to the director.

Duties and responsibilities of the director shall also incorporate those outlined in the Written Consent Appointment Director Document, effective August 26, 2025.

**Fees and Terms:** The board service fees for Cape's services under this Services Agreement commence June 4, 2025, and conclude March 31, 2026, unless mutually extended. Fees are $10,000 per month, payable monthly in advance. If Client enters or

files bankruptcy, monthly fees increase to $20,000 per month, payable monthly in advance, until there is a resolution/restructure with the creditors and franchisor or this Agreement is terminated.

All fees and expenses incurred shall be payable by ACH transfer or check, at Cape's election. Cape will submit expenses for reimbursement by e-mail each week and payment is immediately due as outlined above. Agreement extensions may be memorialized in writing. E-mail correspondence acknowledged by the Parties may serve as a valid and enforceable addendum to this Agreement.

**Expenses:** Client agrees to reimburse Cape for all reasonable out-of-pocket expenses, to include travel, reasonable accommodation, and meals while on site, travel on Client's behalf and document prep services in connection with the performance of the agreed-upon services.

**Client: Sailormen, Inc.**

9500 S. Dadeland Blvd
Miami, FL 33156

Attn: Kara Nordstrom

**Advisor: Cape Point Advisory Partners, LLC**

2201 Rhododendron Court
Charlotte, NC 28205

Attn: Ralph N. Strayhorn

**IN WITNESS THEREOF**, the Parties have executed Addendum as of the date first written above.

**Sailormen, Inc.**

By: Kara Nordstrom
Title: Chair

**Cape Point Advisory Partners, LLC**

By: Ralph N. Strayhorn
Title: Managing Member

extended. Fees are $10,000 per month, payable monthly in advance. If Client enters or files bankruptcy, monthly fees increase to $20,000 per month, payable monthly in advance, until there is a resolution/restructure with the creditors and franchisor or this Agreement is terminated.

All fees and expenses incurred shall be payable by ACH transfer or check, at Cape's election. Cape will submit expenses for reimbursement by e-mail each week and payment is due within 3 business days as outlined above. Administrative extensions (e.g. term extensions) may be agreed via email acknowledgement by both Parties; material changes to fees, scope, or duties must be set forth in a signed written amendment.

**Expenses:** Client agrees to reimburse Cape for all reasonable out-of-pocket expenses, to include travel, reasonable accommodation, and meals while on site, travel on Client's behalf and document prep services in connection with the performance of the agreed-upon services.

**Client: Sailormen, Inc.**

9500 S. Dadeland Blvd
Miami, FL 33156

Attn: Kara Nordstrom

**Advisor: Cape Point Advisory Partners, LLC**

2201 Rhododendron Court
Charlotte, NC 28205

Attn: Ralph N. Strayhorn

**IN WITNESS THEREOF**, the Parties have executed Addendum as of the date first written above.

**Sailormen, Inc.**

By: Kara Nordstrom
Title: Chair

**Cape Point Advisory Partners, LLC**

By: Ralph N. Strayhorn
Title: Managing Member